JOHN ROBERTSON'S ADM'RX v. JAMES PAUL.

A power to sell contained in a mortgage or deed of trust given to secure the payment of a debt, although not revoked, on general principles, by the death of the constituent, is inconsistent with our statutes respecting the settlement of estates of deceased persons, and therefore cannot be executed after the death of the constituent.

It seems that funeral expenses, expenses of the last sickness, expenses of administration, the allowance to the widow and children, and the expenses incurred in the preservation, safe keeping and management of the estate, have preference over a specific lien created in the life time of the decedent, except where such lien is for the purchase money of the property to which it is attached.

The principle recognized, that the payment of the purchase money is the essential constituent of title to real estate.

Appeal from Galveston. Tried before the Hon. Nelson H. Munger.

Suit by the appellee against appellant, for the balance due on a promissory note of the defendant's intestate. There was no controversy about the facts. The jury found a special verdict as follows :

John Robertson, in his life time, to wit : on the 4th day of August, 1853, executed his note in favor of plaintiff for $600, payable twelve months after date, with interest at twelve per cent per annum from date until paid ; and that at the same time he executed a deed of trust on lot number twelve, in block number six hundred and eighty-five, in the City of Galveston, to Oscar Farish and Albert Ball, as trustees, to secure the payment of said note ; that on the ——— day of September, 1854, said John Robertson departed this life intestate ; that on the ——— day of October, 1854, the defendant, who was the surviving widow of said John Robertson, was duly appointed by the Probate Court of Galveston County, admin-

istratrix on his estate ; that on the third day of February, 1855, Oscar Farish, one of the trustees, at the request of the plaintiff, sold said lot, complying in all things with the requirements of said deed of trust ; that said sale was made after the death of said John Robertson ; that at the time of said sale, the note mentioned had not been presented to the administratrix for allowance ; that no part of the said note had been paid at the time the sale was made by the trustee ; that said James Paul purchased said lot at said sale, he being the highest and best bidder, for the same, at the sum of five hundred and twenty-five dollars ; that said trustee charged as expenses and commission for executing said trust, the sum of thirty-three dollars and twenty-five cents, which was paid to him by said James Paul, and the balance of the purchase money, amounting to the sum of four hundred and ninety-one dollars and seventy-five cents, was entered by said trustee as a credit on said note, and a deed for said lot was made and executed by said Farish as said trustee to said Paul, as the purchaser of said lot, dated the 3rd day of February, 1855 ; that on the 9th day of February, 1855, said note with the deed of trust and the affidavit, annexed to the petition, were presented to said administratrix, for allowance as a claim against the estate of said John Robertson, which by her was rejected ; that the said lot was embraced and included in the inventory of said estate, made by said administratrix, and was appraised at the sum of one thousand dollars ; that said note was given for the purchase money of said lot, which was purchased by said John Robertson from said Paul during the coverture between said Robertson and the defendant, and was held as community property ; that if said credit shall be allowed, which is entered on said note, there will remain due on said note, at this time, two hundred and twenty-five 59-100 dollars, including interest ; and if said credit shall not be allowed, there will be due on said note the sum of seven hundred and thirty-four 40-100 dollars, including interest.

The deed of trust authorized either of the trustees named to execute it. The petition and answer both alleged all the material facts, and both contained a prayer for general relief.

*D. D. Atchison*, for appellant.

*J. B. & G. A. Jones*, for appellee.

WHEELER, J. The validity of the plaintiff's demand, and his right to recover in this action, must depend upon the authority of the trustee to sell under the power, after the death of the debtor. The instrument, called a deed of trust, was but a mortgage, containing a power to sell. The practice of inserting such a power in mortgages, had its origin in England, in consequence of the inconveniences attending the existing practice of foreclosure in that country. And though its propriety was at one time questioned, as being an extraordinary and dangerous power, (1 Madd. Ch. R. 160,) it is now firmly established. (2 Story, Eq. Sec. 1027.) It is usual to add to the mortgage a power of sale in case of default. (4 Kent, Com. 146.) The power may be given to the mortgagee, or it may be placed in a third person, as trustee for both parties, as in this instance. " These powers fall under the class of " powers appendant or annexed to the estate, and they are " powers coupled with an interest, and are irrevocable, and " are deemed part of the mortgage security, and vest in any " person, who, by assignment or otherwise, becomes entitled to " the money secured to be paid." (3 Kent. Com. 147, and notes, 2 Story Eq. Sec. 1027, and note.)

On general principles, it is clear, the death of the mortgagor would not operate a revocation of the power. Whether the statute governing the settlement of the estates of decedents, will cause it to have that effect, is the question to be determined. And we are of opinion that it will.

Repeated decisions have settled, that a mortgage is a "claim for money" within the meaning of the statute, (Art. 1156,) which must be presented to the administrator for allowance, and to the Chief Justice for approval, before it can be enforced. (Graham v. Vining, 1 Tex. R. 639 ; Danzy v. Swinney, 7 Id. 625 ; 11 Id. 94 ; 12 Id. 43.) The mortgage, or other evidence of the debt, secured by it, must be presented, " accompanied by an affidavit, in writing, that the claim is just, and that all legal offsets, payments and credits, known to the affiant, have been allowed," before it can be allowed by the administrator, or approved by the Chief Justice, (Art. 1158 ;) and it must be allowed and approved; before payment can be required, or legally made by the administrator, otherwise than upon his own personal responsibility, in case there should not be assets sufficient to satisfy the preferred claims. After the mortgage has been " allowed and approved, or established by suit," the manner of proceeding to enforce it, is prescribed by the statute.— (Art. 1168.) Although it is a privileged claim, and has a preference over debts generally, which are not secured by a lien ; yet there are certain enumerated debts, which have preference by the statute, over debts secured by mortgage, or other lien ; as, funeral expenses ; expenses of the last sickness ; and expenses of administration, including the allowance to the widow and children ; and the expenses incurred in the preservation, safe keeping and management of the estate. (Art. 1187.) These provisions of the statute, requiring the mortgage to be duly presented for allowance and approval ; and giving the enumerated claims a preference in the order of payment, would be defeated, if the mortgagee can proceed, as in this instance, to enforce it under the power to sell, irrespective of the statute. That the mortgage contains a power to sell, does not change its essential character. It is still a security, and nothing but a security for the payment of a debt. The debt is the principal thing ; the mortgage is but an incident. The debt remains, as a demand against the estate, of the same

and no higher grade, in consequence of the power contained in the mortgage. It comes within the letter and policy of the law, which requires the presentation of the claim; and which postpones its payment to other preferred claims. To permit its enforcement otherwise than as the statute prescribes, would be to defeat the express requirements, and the manifest policy of the law.

This, we think, is unquestionable, as respects the case of mortgages, in general, though they contain a power to sell, in default of payment. In the present case, however, the mortgage was given to secure the purchase money for the property mortgaged. The price remaining wholly unpaid, the vendor has the better right, or superior title to the land. (Dunlap v. Wright, 11 Tex. R. 597.; Howard v. Davis, 6 Id. 174.) In this case, therefore, the property was first subject to the payment of the purchase money secured by the mortgage; and until that be satisfied, it will not be subject to any other claim, upon the estate, though having a preference over debts generally secured by mortgage. To vest an indefeasible title in the estate, which will render the property subject to the payment of other claims upon it, the purchase money must be paid. But although the property is not subject to the payment of the other debts of the estate until after payment of the purchase money; still there is the same necessity for its presentation for allowance and approval, duly authenticated, as in the case of other mortgages.

We therefore conclude that the sale was unauthorized, and that the plaintiff, claiming to hold the property exempt from administration, was not entitled to have his claim, or any part of it, allowed and approved. Not having presented it in a manner which entitled him to its allowance, the administratrix was in no fault in refusing to allow it; and her refusal gave him no right of action for its establishment. And as the plaintiff was not entitled to sue, upon the refusal to allow his claim, on the presentation of it, as averred in his petition, it

might be held that the judgment should be reversed and the case dismissed. But it being for the purchase money, in order to obtain the benefit of the purchase, which is claimed by the administratrix, the interest of the estate, no less than of the plaintiff, requires its allowance. It cannot be disallowed consistently with the claim of title set up by the administratrix in her answer.

The answer, indeed, though it contests the plaintiff's right on the ground of the illegality of the sale, and the wrongful acts of the defendant in that regard, does not deny that the purchase money for the lot remains unpaid ; but tacitly admits it. Its averments, taken in connexion with the fact that the debt remains unpaid, contain matter sufficient to enable this Court finally to determine the rights of the parties ; and suggest the propriety of doing so, without sending the plaintiff out of Court to present his claim anew. The merits of the case are fully before the Court by the averments of the parties; and it manifestly appears thereby, that the plaintiff's demand ought to be admitted and allowed as a valid, subsisting claim against the estate ; and as the estate cannot acquire an indefeasible title to the property, until it shall have been allowed and paid, it is manifest the defendant cannot rightfully, or without prejudice to the estate, disallow it, and the presentation of the claim anew, would be but a useless formality. And as the judgment may be here rendered, which will fully attain the right and justice of the case, this Court will render the judgment which the Court below might have rendered : that is, that the sale, under the power, be set aside and held for naught ; the plaintiff's claim and mortgage be adjudged valid and subsisting ; and be certified to the Probate Court for settlement as the law provides ; and that the plaintiff pay all the costs of this suit incurred, both in the District Court and in this Court.

Reversed and reformed.