## BRITTON v. FISCHER et al.
### No. 12817.

Court of Civil Appeals of Texas. Fort Worth.

April 8, 1933.

Rehearing Denied May 13, 1933.

Mathis & Caldwell, of Wichita Falls, for appellant.

John C. Kay, of Wichita Falls, and E. E. Fischer, of Tyler, for appellees.

CONNER, Chief Justice.

This suit was instituted by appellant, Mrs. W. T. Britton, a widow, on December 22, 1931, against Mrs. Myrtie H. Fischer and Lucile Allbright each individually and each as independent executrices of the last will and testament of J. W. Henderson, deceased, to recover a balance due on a certain note and mortgage executed by J. W. Henderson. The trial resulted in a judgment against appellant, from which she has prosecuted this appeal.

The trial court's findings of fact and conclusions of law so clearly suggest the issues of both pleading and evidence upon the trial that we deem it only necessary in the statement of this case to copy them. They read:

"Findings of Fact.

"1. On November 1, 1927, J. W. Henderson made, executed and delivered to the plaintiff, Mrs. W. T. Britton, a widow, a promissory note in the sum of Ten Thousand and no/100 ($10,000.00) Dollars, due on or before three (3) years from its date, bearing interest from date at the rate of eight per cent per annum.

"This note contained a provision that the maker agreed to pay ten per cent per annum interest on any past due interest or principal of the note. This note was signed by J. W. Henderson, who was then alive, and was payable at the First National Bank of Wichita Falls, Texas.

"2. To secure the payment of this note the said J. W. Henderson on November 1, 1927, gave to C. E. McCutchen as trustee, for the benefit of the said Mrs. W. T. Britton, a deed of trust lien upon the following described real property situated in Wichita County, Texas, towit:

"The East 50 feet of lots Nos. 8, 9, and 10 in Block No. 173, of the original town of Wichita Falls, Texas, which deed of trust was duly filed for record in the deed of trust records of Wichita County, Texas.

"3. I find that the said note above described and said Deed of Trust above described were regular upon their face and created valid obligations against the said J. W. Henderson and in favor of Mrs. W. T. Britton, the plaintiff herein.

"4. The note for Ten Thousand ($10,000.00) dollars above described, executed by the said J. W. Henderson and payable to the plaintiff, Mrs. W. T. Britton, was delivered to Mrs. Britton as evidence of a loan of Ten Thou-

sand ($10,000.00) dollars made by the said Mrs. W. T. Britton to J. W. Henderson.

"5. That said note was past due and unpaid except as set out in paragraph six herein, and that plaintiff caused the trustee in said deed of trust to advertise said property for sale as provided in said deed of trust, and that on the 1st day of December, 1931, said property was sold in accordance with notice, theretofore given, and as provided under the terms of said deed of trust to Mrs. W. T. Britton for Thirty-five Hundred ($3500.00) dollars, her bid being the highest bid on said property.

"6. Various payments were made upon said note, towit:

"May 2, 1928, credit on principal, $1000.00.

"May 2, 1928, credit on interest, $40.00.

"September 12, 1928, credit on interest, $360.00.

"June 29, 1929, credit on principal, $1000.00.

"November 26, 1930, credit on interest, $400.00.

"March 4, 1931, credit on interest, $248.00.

"December 1, 1931, credit on note by sale of the property secured by the deed of trust above mentioned, $3500.00.

"7. No other payments on principal or interest have ever been made upon this note.

"8. On April 3, 1928, J. W. Henderson died in Wichita County, Texas, leaving a written will which was duly admitted to probate in the Probate Court of Wichita County, Texas.

"9. This will provided that the daughters of J. W. Henderson, towit, Myrtie H. Fischer and Lucile Allbright, two of the defendants herein, were appointed as Independent Executrices of the estate of J. W. Henderson, without bond and that no other action be had in the Probate Court with reference to the probating of said will other than to prove and record said will and file an inventory, appraisement and list of claims.

"10. Acting under the terms of said will, the said Myrtie H. Fischer and Lucille Allbright, two of the defendants herein, duly qualified as independent executrices of the estate of J. W. Henderson, deceased, and have since said time and are at this time acting as such independent executrices, and have since their qualification and still are exercising control over said estate as such executrices.

"11. The said J. W. Henderson, deceased, in said will directed that his just debts be paid out of his estate as soon as possible after the probating of said will.

"12. The said will also provided that after the payment of the just debts of the said J. W. Henderson that all of his other property, real and personal, of whatsoever kind and character, was to pass to and vest in fee simple in his daughters, the defendants, Myrtie H. Fischer and Lucille Allbright, share and share alike, as their separate and individual property.

"13. In due time after the sale of said property above described under said deed of trust, Mrs. W. T. Britton presented her unsecured claim to the said Myrtie H. Fischer and Lucille Allbright, as independent executrices of the estate of J. W. Henderson, duly verified for the sum of Six Thousand One Hundred Fourteen and no/100 ($6,114.00) dollars, which claim was not allowed by the said executrices in any amount whatsoever, but was disallowed and denied in full; and at the same time the plaintiff herein filed a copy of said claim, duly verified, with the Probate Court of the said Wichita County, Texas.

"14. I further find as a fact that after said will had been admitted to probate and after the said Myrtie H. Fischer and Lucille Allbright had qualified as independent executrices thereof that the said last named parties converted to their own use and benefit out of the estate of the said J. W. Henderson, deceased, the sum of Three Hundred ($300.00) dollars each, which they have used for their personal benefit.

"15. I further find as a fact that a great part of the estate of the said J. W. Henderson, deceased, is still held by said independent executrices.

"16. I further find as a fact that the plaintiff placed the note herein sued upon with attorneys for collection, or suit and agreed to pay them the ten per cent provided for in said note as attorneys' fees.

"17. I further find as a fact that there now remains past due and unpaid on said note the sum of Six Thousand One Hundred Fourteen and no/100 ($6,114.00) Dollars.

"18. I further find as a fact that the said deed of trust sale above mentioned was a valid sale.

"19. I further find as a fact that plaintiff's original petition was filed in this court on the 22nd day of December, 1931.

"Conclusions of Law.

"I conclude as a matter of law that the plaintiff is not entitled to any of the relief prayed for against any of the said defendants, because of the provisions of article 3515-A of the Revised Civil Statutes as amended by the Acts of the 42nd Legislature."

Title 54, Rev. Statutes, relates to the estate of decedents. In chapter 1, article 3290 of the title, the county court is given general jurisdiction of a probate court, to probate wills, grant letters testamentary or of administration, settle the accounts of executors and administrators, and transact all business appertaining to the estates of deceased persons, including the settlement, partition, and distribution of such estates.

Chapters 1 to 12 of the title detail the various proceedings required ·in the probating of wills, the appointment of executors and administrators, the appraisement of claims and rights, duties, and powers of executors and administrators. Chapter 12, however, relates to an administration under a will independent of the probate court. Article 3433 of the ·chapter declares that: "When a will has been probated, its provisions and directions shall be specifically executed, unless annulled or suspended by order of the court probating the same in a proceeding instituted for that purpose by some person interested in the estate."

The next article (3434) directs citation to issue to the executor. Article 3435 relates to the order of the court. But article 3436 provides that: "Any person capable of making a will may so provide in his will that no other action shall be had in the county court in relation to the settlement of his estate than the probating and recording of his will, and the return of an inventory, appraisement and lists of claims of his estate." Article 3437 reads: "Any person having a debt or claim against the estate may enforce the payment of the same by ·suit against the executor; and, when judgment is recovered against the executor, the execution shall run against the estate of the testator in the hands of the executor that may be subject to such debt. The executor shall not be required to plead to any suit brought against him for money until after one year from the date of the probate of such will."

·Chapters 13, 14, 15, and 16 relate to the appointment of subsequent administrators under a will withdrawing the estate from administration, etc. Chapter 18 (art. 3502 et seq.) relates to the presentation of claims, and chapter 19 (art. 3531 et seq.) relates to the classification of claims and payment.

.It is thus seen at a glance that a very marked distinction is to be observed in the administration of a·deceased person's estate by an independent executor under a will, and such an administration in the county court by an administrator or executor without powers independent of the probate court.

In the will under consideration, which was duly probated as the court finds, it was specifically provided that J. W. Henderson's debts should be paid and that his executors, Mrs. Myrtie H. Fischer and Lucille Allbright, were empowered to act without bond and independently of the probate court except other than to have the will probated and return an inventory and list of claims of the estate.

In Paton v. Baugh (Tex. Civ. App.) 265 S. W. 250, it is held that the intention of a testator as expressed in his will should be given effect unless the law on public policy prevents.

In disposing of the case of Taylor v. Williams, 101 Tex. 388, 108 S. W. 815, 817, our Supreme Court had occasion to discuss the powers of an independent executor which we think pertinent in the present case. It is there said: "None of these things [various proceedings prescribed in the ordinary administration] are true of administrations by independent executors. Such trustees make allowances, pay claims, and settle up estates without any control from the probate court. They are liable to suits to recover debts or allowances, and to enforce liens or other rights, existing against the estates in any of the courts of civil jurisdiction, and the judgments of such courts are enforced against property of the estate in their hands, by the usual processes. It is true, as held in Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367, that the management and settlement of an estate by an independent executor is an administration; but this proves little to the present purpose. The question is, is it that kind of an administration which, by force of the probate law, extinguishes or supersedes the power of sale of a trustee appointed by the testator? The contrast between such administrations and the regular ones satisfies us that the reasons upon which the rule under discussion was founded do not apply to them. That rule, broadly stated, is that all claims for money, including those secured by liens, must be probated and enforced through the probate court, and that the existence of a power of sale does not alter the case. The very statement of it shows that it does not apply to independent administrations. No creditor can go into the probate court to enforce his claim against an executor so long as his independent control is allowed to continue, whereas all creditors are required to go into that court to enforce claims against regular administrators. In the case of independent administrations the statutes have not required any course of procedure through which relief may be had, while in the other case the mode of proceeding is carefully and exclusively prescribed. The conclusion is that the creditor is left to pursue the general rules of law by which remedies are given, and one of those remedies, in cases like this, is the exercise of the power of sale. We can find no reason for holding that such a power cannot be exercised, seeing that it is not extinguished by death, nor forbidden by any provision of the probate law, like those controlling regular administrations."

See, also, Whitmire v. May, 96 Tex. 317, 72 S. W. 375; Swearingen v. Williams, 28 Tex. Civ. App. 559, 67 S. W. 1061; Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367; Robertson's Adm'x v. Paul, 16 Tex. 472; Taylor v. Davidson (Tex. Civ. App.) 120 S. W. 1018, 1019; Smyth v. Caswell, 65 Tex. 379.

194

The amendment, or act of the Legislature designated by the court below as article 3515a, Rev. Statutes, and given the effect of denying all relief to the appellant, is to be found on pages 79 and 80, c. 52 of the General Laws of Texas passed by the Forty-Second Legislature (Vernon's Ann. Civ. St. art. 3515a). We copy the same in full as follows:

"An Act to regulate the presentation, allowance, approval, classification and payment of claims and liens against estates of deceased persons and to direct the manner of collection and foreclosure of such liens; repealing all laws and parts of laws in conflict herewith, and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. · That in addition to the matter contained in the affidavit provided for in Article 3514 and 3515 of the Revised Civil Statutes of 1925, when a secured claim against an estate is presented, the claimant shall specify therein:

"(a) Whether it is desired to have the claim allowed and approved as a matured secured claim to be paid in due course of administration, in which event it shall be so paid if allowed and approved, or

"(b) Whether it is desired to have the claim allowed, approved and fixed as a preferred debt and lien against the specific property securing the indebtedness and paid according to the terms of the contract which secures the lien, in which event it shall be so allowed and approved if it is a valid lien, provided, however, that the executor or administrator may pay said claim prior to maturity if it is for the best interest of the estate to do so.

"Sec. 2. If a secured claim is not presented within the time provided by law it shall be treated as a claim to be paid as provided in Subsection (b) of Section 1. If the instrument evidencing or supporting a claim provides for attorney's fees then the claimant may include as a part of the claim the portion of such fee that he has contracted to pay to an attorney to prepare, present and collect such claim. If the claim is presented under Subsection (b) of Section 1 and is not contested the fee shall not exceed fifty (50%) per cent of the amount provided in the instrument evidencing or supporting the claim, which fee shall be treated as a matured part of such claim, but if the claim is contested the full amount of attorney's fees may be recovered.

"Sec. 3. When an indebtedness has been allowed and approved under Subsection (b) of Section 1, hereof no further claim shall be made against other assets of the estate by reason thereof, but the same thereafter shall remain a preferred lien against the property securing same and the property shall remain security for the debt in any distribu-tion or sale that may be made of it prior to final maturity and payment of the debt.

"Sec. 4. If property securing a claim allowed, approved and fixed under Subsection (b) of Section 1, hereof is not sold or distributed within twelve months from the date letters testamentary or of administration are granted the executor or administrator shall promptly pay all maturities which have accrued on the debt according to the terms thereof and shall perform all the terms of any contract securing same. If the executor or administrator defaults in such payment or performance on motion of the claimholder, the court shall require the executor or administrator to sell said property subject to the unmatured part of such debt and apply the proceeds of the sale to the liquidation of the maturities or, at the option of the claimholder, a motion may be made in a like manner to require the executor or administrator to sell said property free of such lien and apply the proceeds to the payment of the whole debt.

"Sec. 5. All laws, or parts of laws, in conflict herewith are hereby repealed, but otherwise this Act is cumulative of the provisions of Chapter 18 and 19, Title 54, of the Revised Civil Statutes of 1925, relating to the allowance, approval and classification of claims and liens against the estates of deceased persons.

"Sec. 6. The fact that existing law is inadequate and does not clearly and concisely regulate the manner of the presentation, allowance, approval, classification and payment of claims and liens against estates of deceased persons, creates an emergency and an imperative public necessity, that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said Rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

"Approved April 15, 1931,

"Effective 90 days after adjournment."

■ It is to be noted that the amendment does not in specific terms refer to the administration of a deceased person's estate under a will naming executors given powers independent of the probate court. It is to be further noted that in the beginning of the amendment it is indicated that it is supplementary to articles 3514 and 3515, which articles are embodied in chapter 18 of title 54, regulating the presentation of claims in the course of an ordinary administration. It is to be further noted that in section 5 it is declared that the act "is cumulative of the provisions of Chapter 18 and 19, Title 54, of the Revised Civil Statutes of 1925, relating to the allowance, approval and classification of claims and liens against the estates of deceased persons." Section 6 also indicates,

as we think, that the provisions of the act were not intended to apply to an administration by independent executors.

It is to be further noted that as shown by the court's findings the Henderson note and mortgage was dated November 1, 1927; that by its terms it was to mature on or before three years after its date, which would be November 1, 1930. Henderson died April 3, 1928. The act of the Legislature we have quoted became effective August 21, 1931, three years, nine months, and twenty days after the date of the Henderson note and mortgage, and three years, four months, and eighteen days after the death of Henderson, and nine months and twenty days after the maturity of the note.

The findings fail to show the exact date Henderson's will was probated. It was duly probated, however, and it appears that after Henderson's death payments were made on his note, presumably by the executors, beginning May 2, 1928, and ending November 26, 1930, which aggregated $3,048. It thus appears that the act of the Legislature relied upon was passed subsequently to the date upon which the appellant's debt and right of its enforcement had become fully matured and fixed. It should not, therefore, be construed as legally authorizing burdensome conditions and requirements. Thompson v. Cobb, 95 Tex. 140, 65 S. W. 1090, 93 Am. St. Rep. 820; International Building & Loan Ass'n v. Hardy, 86 Tex. 610, 26 S. W. 497, 24 L. R. A. 284, 40 Am. St. Rep. 870.

The judgment below acquits the appellee executors of all claims without reservation. They were sued individually as well as executors, and the findings are to the effect that as individuals each had received the sum of $300 out of the Henderson estate, for the recovery of which proceedings against them as individuals in the probate court was in no event necessary. See article 3464, Rev. Statutes; Thomas v. Bonnie, 66 Tex. 635, 2 S. W. 724.

Moreover, the findings show that the appellees are still acting as independent executors and as such exercising control over the Henderson estate, but we find neither pleading, evidence, nor finding which shows that the Henderson estate has been exhausted or that there are any creditors or preferred claims existing that will do so. Indeed, for all that the record shows the estate may yet consist of properties of large value. Under such circumstances, the appellees should not be denied the right to resort to all lawful means of satisfying appellant's unsecured debt.

Accordingly, the trial judge's findings of fact are adopted, and it is ordered that the judgment below be reversed and judgment here rendered in favor of appellant against appellees as executors for the sum of $6,114, with interest thereon from date of judgment in the trial court at the rate of 6 per cent. per annum, to be satisfied by execution running against such of the estate as remains in the hands of appellees as executors; and if the judgment cannot be thus satisfied, then execution shall issue against appellees, each individually, for $300, or so much thereof as may be necessary to liquidate such balance.